**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **LAVON BILLUPS,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **Chicago Police Officer T. KINSELLA, Star** ) <br> **# 17145, and the CITY OF CHICAGO,** ) <br> ) <br> **Defendants.** ) | **No. 08 CV 3365** <br><br> **Hon. Joan H. Lefkow** |

## OPINION AND ORDER

Lavon Billups filed a second amended complaint against Chicago police officer T. Kinsella ("Officer Kinsella") and the City of Chicago ("the City") under 42 U.S.C. § 1983 for unlawful search and seizure, false arrest and unlawful detention, and excessive force under the Fourth and Fourteenth Amendments to the United States Constitution.[1] Billups has also asserted a claim of indemnification against the City. Before the court is defendants' motion for summary judgment. For the following reasons, the motion [#80] is granted.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c) & advisory committee's notes. The

---

[1] In its December 4, 2009 Opinion and Order, the court dismissed the eleven other named defendant officers from the action, concluding that Billups's claims against them were time-barred.

party seeking summary judgment bears the initial burden of proving that there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the nonmoving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact is one that might affect the outcome of the suit. *Insolia*, 216 F.3d at 598–99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## **BACKGROUND**[2]

Billups lives on the first floor of a multi-family dwelling owned by her mother, Ann Billups, on West Gladys Ave. in Chicago. On June 14, 2006, Officer Kinsella received information that Billups's boyfriend, Maurice Boyce, had displayed a .9 mm handgun at the apartment on various occasions. Further investigation revealed that Boyce was a convicted felon. Officer Kinsella, a white male with dark brown hair, proceeded to obtain a search warrant for the apartment and Boyce that targeted the .9 mm handgun, ammunition, and documents concerning Boyce's residency from Cook County Judge Kunkle on June 14, 2006 at 8:25 a.m.

---

[2] Defendants have objected to various statements of additional fact as not complying with Local Rule 56.1. The court has included in the background section only those portions of Billups's Statement and defendants' responses that are appropriately presented, supported, and relevant to the resolution of this motion. The facts are taken in the light most favorable to Billups, the nonmoving party.

On June 14 to 15, 2006, Officer Kinsella was on the midnight shift, lasting from 10 p.m. on June 14 to 6 a.m. on June 15. At some point during this shift, he met with eleven other officers to brief them on the warrant. Between 2:30 a.m. and 3:00 a.m. on June 15, 2006, Officer Kinsella, accompanied by these officers, executed the search warrant at Billups's apartment. They first entered a locked door to the building. Officer Kinsella then knocked on Billups's apartment door. Billups, who was watching television in a back bedroom, heard banging at her door and went to see who was there. She was told that it was the police, although at first she thought that it was a joke. Billups attempted to open the door but could not because the security lock was jammed. She returned to the rear bedroom to wake Boyce, who was sleeping at the time. When Boyce reached the door, he was also told that the police were requesting entry into the apartment. Like Billups, he was unable to unlatch the security lock. The officers then breached the door, entering with their guns drawn. Officer Kinsella did not initiate or execute the breach. Billups and Boyce were ordered to the floor. A white female officer slammed Billups to the floor and handcuffed her. Boyce was pushed against a wall, handcuffed, and seated on a couch in the living room. DeAndre Boyd, Billups's son, was taken from his bedroom and seated on a chair across from Boyce. After spending between forty-five minutes and an hour on the floor crying, Billups was lifted off the floor by a female officer and pushed onto the couch. She then had an asthma attack and felt tingling in her fingers and shooting pains in her arm. She requested her inhaler, which officers found and gave her. Officer Kinsella was never informed that she needed medical attention. Billups refused offers to call an ambulance and did not inform anyone that her shoulder or rotator cuff were hurt.

The search lasted approximately three hours. Officer Kinsella searched the enclosed back porch, and not any rooms in the house (i.e., the living room, dining room, kitchen, bedrooms, or closets). Several male officers remained stationed in the front area of the apartment. Boyce described two of these officers as white with black hair, one slightly taller than the other, and one weighing about 140 pounds and the other 190 pounds. Boyce testified that these two officers did not observe Billups being lifted off the ground because they were too focused on some photographs on the wall. No gun was recovered, but Billups had various items of property taken or destroyed. A ceramic lion was kicked, various hair products ended up in the backyard, Billups's hair dryer and a window were broken, and Pepto-Bismol was poured onto Billups's clothing. A pair of gold earrings and $200 in cash were missing after the search, although Billups could not be sure that an officer took them. Officer Kinsella did not kick the ceramic lion or spill Pepto-Bismol on Billups's clothing. Billups, Boyce, and Boyd were unable to identify from a photo array any of the officers that executed the search warrant or committed any of the actions complained of in this suit. The Chicago Police Department repaired the doors and gate that had been broken during the search.

## ANALYSIS

**I.     Unlawful Search Claim (Count I)**

To prevail on her unlawful search claim, Billups must establish that the execution of the search warrant for her apartment was unreasonable. *See Wilson* v. *Arkansas*, 514 U.S. 927, 934, 115 S. Ct. 1914, 131 L. Ed. 2d 976 (1995) ("[T]he method of an officer's entry into a dwelling [is] among the factors to be considered in assessing the reasonableness of a search or seizure.");

4

*Belcher* v. *Norton*, 497 F.3d 742, 747 (7th Cir. 2007). Reasonableness is evaluated from an objective standpoint, considering the facts and circumstances known to the officers at the time. *See Graham* v. *Connor*, 490 U.S. 386, 396–97, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). While officers generally have discretion in determining how best to execute a warrant, their actions are still subject to the Fourth Amendment's reasonableness requirement. *Dalia* v. *United States*, 441 U.S. 238, 257, 99 S. Ct. 1682, 60 L. Ed. 2d 177 (1979). "Officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry."[3] *Richards* v. *Wisconsin*, 520 U.S. 385, 387, 117 S. Ct. 1416, 137 L. Ed. 2d 615 (1997).

Billups first argues that entry was unreasonable because Officer Kinsella broke down the exterior door to the apartment building. The Seventh Circuit, however, has held that an individual does not have a reasonable expectation of privacy in common areas of multiple dwelling buildings, even where access is controlled. *See, e.g.*, *United States* v. *Villegas*, 495 F.3d 761, 767–78 (7th Cir. 2007); *United States* v. *Concepcion*, 942 F.2d 1170, 1172 (7th Cir. 1991). Because the front door and common hallway were exposed to the public and used by others residing in the building, Billups's Fourth Amendment rights were not violated when the exterior door to the apartment was breached.[4] *See Villegas*, 495 F.3d at 767–78; *Concepcion*, 942 F.2d at 1172.

---

[3] Certain exceptions to the knock and announce rule, not applicable to this case, exist. *See Green* v. *Butler*, 420 F.3d 689, 695 (7th Cir. 2005).

[4] Although Billups's mother owned the building and also resided there, Billups has not presented evidence that the building should be considered to be one dwelling occupied only by family members. Instead, she has agreed that it was composed of multiple dwelling units. *Cf. United States* v. *King*, 227 F.3d 732, 749–50 (6th Cir. 2000) (reasonable expectation of privacy existed where all tenants of the building were family members).

Billups next argues that there is at least a dispute as to whether Officer Kinsella followed the knock and announce rule in entering her apartment. She claims that Officer Kinsella (or his fellow officers) must have been attempting to break down her door when she heard a beating on the door. This contention is based on the fact that the security lock on the door was jammed when she went to open it, something that had never before occurred even though many people had knocked on that door. But Billups's speculation as to Officer Kinsella's failure to knock is undermined by her admission of key facts. She admits that she heard knocking and ran from her bedroom to the front door. When she approached the door, the police identified themselves and requested entry. She attempted to open the door but, when she could not, returned to her bedroom and woke Boyce. The two of them proceeded to the front door, where the police again identified themselves and sought entry. Boyce similarly did not manage to open the door, at which point the police breached the door. Billups's admissions leave no dispute as to whether the knock and announce rule was followed: Officer Kinsella (or a fellow officer) knocked loudly on the door, waited a reasonable time for Billups and Boyce to attempt to let them in, announced his identity, and undertook a forcible entry only after it became clear that entrance could not otherwise be obtained.

Billups's final argument that the search was unreasonable is that it was executed in the middle of the night. Such intrusions during the night are generally disfavored,[5] particularly where officers are acting without a warrant. *See United States* v. *Jerez*, 108 F.3d 684, 690 (7th Cir. 1997). The time of execution, however, is just one consideration in the reasonableness

---

[5] Unlike federal law, which requires a warrant to be executed between 6:00 a.m. and 10:00 p.m. unless a judge for good cause authorizes execution at another time, Illinois law allows a search warrant to be executed at any time of day or night. *Compare* Fed. R. Crim. P. 41(e)(2)(A)(ii), *with* 725 Ill. Comp. Stat. 5/108-13.

analysis. Although common courtesy may dictate otherwise, for purposes of the Fourth Amendment, the execution of the warrant during Officer Kinsella's shift was not unreasonable, especially as he was afforded some discretion in determining the manner of execution. *See Dalia*, 441 U.S. at 257. Thus, summary judgment will be entered for Officer Kinsella on this claim.

## II.     Unreasonable Destruction of Property (Count I)

During the search of Billups' apartment, various items were destroyed, damaged, or stolen. In order to be held individually liable under § 1983 for such destruction, Officer Kinsella must have been personally involved. *Minix* v. *Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010). Even drawing all inferences in her favor, Billups has not presented sufficient evidence to connect Officer Kinsella to the property destruction. She has admitted that Officer Kinsella did not breach the front door, kick her ceramic lion, or spill any pink liquid on her clothing. She has also admitted that Officer Kinsella did not search the living room, dining room, bedrooms, kitchen, or closets, making it unlikely that he would have destroyed or taken any property from these rooms. While she claims that $200 and a pair of gold earrings were missing after the search, she "could not say for sure that an officer took those things during the search," Pl.'s Statement of Additional Facts ¶ 28, leaving open the possibility that they were lost at some other time. Although hair products were found in Billups's backyard and a hair dryer and window were broken, there is no evidence in the record that Officer Kinsella played any role in these occurrences.

Billups's only argument is that she does not know which officers were involved in destroying her property. Only Officer Kinsella is before the court, however, and the inability to

7

identify the specific culprit is not enough to survive summary judgment. *See Hessel* v. *O'Hearn*, 977 F.2d 299, 305 (7th Cir. 1992) (affirming grant of summary judgment on property damage claim where plaintiffs admitted they were not sure which of fourteen officers stole their property). Billups cannot proceed on her destruction of property claim against Officer Kinsella based only on speculation that, of the numerous officers at her apartment, he was the one who destroyed her property or failed to prevent the destruction from occurring. *See Molina ex rel. Molina* v. *Cooper*, 325 F.3d 963, 973–74 (7th Cir. 2003) (evidence that defendant was in a truck was not sufficient to link defendant, one of seventeen officers who could have damaged the truck, to the damage); *Calhoun* v. *City of Chicago*, No. 09 C 2200, 2010 WL 4503218, at *7 (N.D. Ill. Oct. 28, 2010). Because Billups may not rely on a "principle of collective punishment as the sole basis of liability," *Hessel*, 977 F.2d at 305, summary judgment will be entered for Officer Kinsella on this claim.

### III. Unreasonable Detention (Count II)

After the officers entered Billups's apartment, Billups was ordered to the ground, handcuffed, and left there for between forty-five minutes to an hour. She was then lifted from the ground and put on the couch. The detention lasted a total of approximately three hours. Billups claims that her detention was unreasonable because she was not the target of the warrant, she did not resist the officers, and she did not pose any threat to them.

"A warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Michigan* v. *Summers*, 452 U.S. 692, 705, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981). Among the reasons for this authority is the government's interest in preventing flight, minimizing the risk of

harm to the officers, and allowing the search to proceed in an orderly and effective manner. *Los Angeles County, Cal.* v. *Rettele*, 550 U.S. 609, 614, 127 S. Ct. 1989, 167 L. Ed. 2d 974 (2007). The officers' authority to detain subject to a search warrant, however, is categorical and not dependent on "the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure." *Id.* at 705 n.19. Because a warrant founded on probable cause existed to search Billups's apartment and Billups was present at the time the warrant was being executed, her detention was authorized. It makes no difference that Billups was not the target of the warrant, as any person present during the search may be detained for its duration. *See United States* v. *Jennings*, 544 F.3d 815, 818 (7th Cir. 2008) (detention of an individual who approached the premises being searched was reasonable); *United States* v. *Pace*, 898 F.2d 1218, 1239 (7th Cir. 1990) (individuals present at the premises being searched may be detained even though they are not residents or occupants of it).

Although Billups may not have actively resisted, the officers had reason to believe that there may be a threat to their safety and thus a need to detain the apartment's occupants. The officers were executing a warrant for a gun and believed that a convicted felon was present in the apartment. This warranted entering the apartment with their guns drawn and ordering Billups and Boyce to the floor.[6] *See Baird* v. *Renbarger*, 576 F.3d 340, 344–46 (7th Cir. 2009) ("[W]hile police are not entitled to point their guns at citizens when there is no hint of danger, they are allowed to do so when there is reason to fear danger.");[7] *Barron* v. *Sullivan*, No. 93 C

---

[6] Billups has not asserted that the officers had their guns drawn and directed at her for the duration of the search. If this were the case, the analysis might be different.

[7] The situation here is unlike that in *Baird*, where the police were inspecting vehicles for altered vehicle identification numbers and there was no reason to believe that their safety would be threatened during the search. *See Baird*, 576 F.3d at 344. The Seventh Circuit noted that the underlying crime in

6644, 1997 WL 158321, at *5 (N.D. Ill. Mar. 31, 1997) ("Defendants were executing an arrest and search warrant for a reputed gang leader and hidden weapons. Plaintiffs cannot seriously argue that, upon entering the premises, the officers did not have grave safety concerns. The Fourth Amendment does not preclude officers in such situations from entering with guns drawn.").

Reasonable force may also be used in effectuating detention. *Muehler* v. *Mena*, 544 U.S. 93, 98–99, 125 S. Ct. 1465, 161 L. Ed. 2d 299 (2005). The use of handcuffs is permissible, particularly where there is a safety risk inherent in executing a search warrant for a weapon and the officers need to detain multiple occupants.[8] *Id.* at 100. A detention may become unreasonable, however, if the detention is unnecessarily prolonged or excessive force is employed. *Rettele*, 550 U.S. at 614; *Summers*, 462 U.S. at 705 n.21. Although three hours is a lengthy period of time to be detained, no evidence has been presented that Billups's detention was prolonged unnecessarily; it appears that the search lasted this amount of time. The Supreme Court has upheld a two to three hour detention in handcuffs as reasonable. *Muehler*, 544 U.S. at 100; *see also Barron*, 1997 WL 158321, at *5 (a search that lasted between two and three hours did not fall into the exception contemplated by *Summers*). To the extent the manner in which Billups was detained is at issue, Officer Kinsella cannot be held responsible for this. Billups has admitted that Officer Kinsella did not handcuff her or pick her up from the floor. As he was not personally involved in the alleged use of excessive force, he cannot be held liable for it under

---

*Baird* was "a far cry from crimes that contain the use of force as an element, crimes involving possession of illegal weapons, or drug crimes, all of which are associated with violence." *Id.*

[8] The record is unclear as to whether Billups was handcuffed for the entirety of the search or only for forty-five minutes to an hour of it. This is immaterial to the court's analysis, however, as neither scenario would make a difference to the outcome.

§ 1983. *See Wormely* v. *Ponce*, No. 06 C 2965, at *7 (N.D. Ill. Nov. 19, 2007) (officer who did not touch plaintiff during search could not be held liable for the allegedly unreasonable manner in which plaintiff was detained). Officer Kinsella's motion for summary judgment on this count will be granted.

## IV.     Excessive Force (Count III)

As discussed above, Officer Kinsella did not slam Billups on the floor, handcuff her, or lift her off the floor and push her onto the couch. Thus, he cannot be held personally responsible for any allegedly excessive force to which Billups was subjected. *See Minix*, 597 F.3d at 833. Faced with the clear failure of her excessive force claim against Officer Kinsella, Billups now argues that Officer Kinsella may be held liable for failing to intervene to prevent the use of excessive force. "A plaintiff may not amend [her] complaint through arguments in [her] brief in opposition to a motion for summary judgment." *Shanahan* v. *City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996). Although her complaint does not explicitly contain allegations that Officer Kinsella failed to stop the use of excessive force, it is plausible to infer from it that, after discovery, Billups would determine which officers used force against her and assert a failure to intervene claim against Officer Kinsella if he did not. Regardless, Billups's claim for failure to intervene fares no better than her excessive force claim.

An officer can be held liable for failing to intervene if he had reason to know that excessive force was being used and a reasonable opportunity to prevent the harm from occurring. *Yang* v. *Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). An officer has a reasonable opportunity to intervene where he could have "called for a backup, called for help, or at least cautioned [the officer using excessive force] to stop." *Id.* "Whether an officer had sufficient time to intervene

11

or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Lanigan* v. *Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997).

The parties dispute whether Officer Kinsella was present when force was used.[9] Billups recalls at least one short male officer with black hair remaining in the living room with her during the search. Boyce testified that there were four male officers in the front room when Billups was lifted off the floor onto the couch, two of them white males with black hair. He described these two officers as clad in vests and approximately 140 and 190 pounds, with one slightly taller than the other. Although the record establishes that Officer Kinsella is a white male with dark brown hair, there is no evidence of his height or weight to compare with Billups's and Boyce's descriptions of the officers. Further, when presented with a photo array, Billups, Boyce, and Boyd were unable to identify any of the officers who were present at Billups's apartment during the search. Billups has also admitted that Officer Kinsella searched only the back porch, which could not be seen from the living room. It is not impossible that Officer Kinsella entered the living room at some point during the search; in fact, he had to enter it in order to reach the back porch. The evidence, however, does not establish a triable issue as to his presence at the time Billups was lifted off the floor. Billups suffered an asthma attack immediately after being lifted off the floor. If Officer Kinsella had been one of the unidentified officers in the living room who allegedly witnessed her being lifted off the floor, he also would have witnessed her asthma attack, making him aware of Billups's need for medical attention.

---

[9] As Officer Kinsella does not contest the issue, the court will assume that Billups was subjected to excessive force for purposes of resolving this motion.

Billups nevertheless agrees that Officer Kinsella was not aware of her need for medical attention, dooming this contention. Further, even if Officer Kinsella was one of the two officers in the room, Boyce testified that these officers were too busy discussing pictures hanging on one of the walls to see the female officer lift Billups off the floor. There is no evidence to the contrary. What remains is little more than speculation that Officer Kinsella had reason to know that the female officer was lifting Billups off the floor in an unreasonable manner. This is not enough to allow the claim to proceed to trial, and thus Officer Kinsella is entitled to summary judgment.

## V. Indemnification (Count IV)

The sole claim against the City is for indemnification. As the court has granted summary judgment in Officer Kinsella's favor on all claims, the City is also entitled to summary judgment.

## CONCLUSION AND ORDER

For the foregoing reasons, defendants' motion for summary judgment [#80] is granted. The clerk is directed to enter judgment in defendants' favor. This case is terminated.

Dated: December 9, 2010                    Enter: _____
                                                  JOAN HUMPHREY LEFKOW
                                                  United States District Judge